IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-853

_____

FILED
March 26, 2024
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. DENITA D. BERG,
Defendant Below, Petitioner,

V.

THE HONORABLE ROBERT E. RYAN, JUDGE OF THE CIRCUIT COURT OF
GRANT COUNTY, WEST VIRGINIA; JOSEPH BERG; JASON BERG; AND
JENNIFER FORD,
Respondents.

_____

Petition for a Writ of Prohibition

WRIT GRANTED AS MOULDED
_____

Submitted: January 9, 2024
Filed: March 26, 2024

Jason R. Sites, Esq.
Sites Law Firm, PLLC
Keyser, West Virginia
Attorney for the Petitioner

Nathan H. Walters, Esq.
Walters & Heishman, PLLC
Moorefield, West Virginia
Attorney for Respondents Joseph Berg,
Jason Berg, and Jennifer Ford

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." Syllabus point 5, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

i

3. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

**BUNN, Justice:**

Petitioner Denita D. Berg invokes this Court's original jurisdiction and seeks a writ of prohibition to prevent the Honorable Robert E. Ryan, Judge of the Circuit Court of Grant County, from enforcing the circuit court's orders appointing a special commissioner to inventory and appraise personal property and requiring the special commissioner to sell personal property prior to determining ownership or issuing a judgment for damages.[1] Because we find that the circuit court exceeded its legitimate powers by ordering the special commissioner to sell personal property in orders based on findings that improperly resolved genuine issues of material fact, we grant the writ as moulded.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Darvin Berg ("Decedent Berg"), a resident of Grant County, died without a will on January 8, 2018. He was married for twenty-nine years to Ms. Berg. Three

---

[1] Petitioner listed the Honorable Lynn A. Nelson, former Judge of the Twenty-First Judicial Circuit, which serves Mineral, Grant, and Tucker Counties, as one of the original respondents in this matter. Judge Nelson issued the orders that are the subject of the petition for a writ of prohibition. However, Judge Nelson retired during the pendency of this matter, and Judge Ryan was appointed to serve the unexpired portion of Judge Nelson's term. Accordingly, Judge Ryan is the appropriate party and has been substituted pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

children from a previous marriage survived Decedent Berg: Respondents Joseph Berg, Jason Berg, and Jennifer Ford (the "children").[2]

The procedural and factual history, while lengthy, focuses on whether Ms. Berg properly probated Decedent Berg's estate. Ms. Berg, as administratrix of Decedent Berg's estate in Grant County, prepared the estate appraisement with assistance from her attorney and listed the children as beneficiaries. Pursuant to the record, a notice of administration to creditors and beneficiaries was published, and the deadline to file claims or objections was October 20, 2018. The children did not file claims or objections.[3] Ms. Berg asserted that the estate was insolvent and ultimately filed a final settlement on October 25, 2018. The Grant County Commission subsequently approved the final settlement and closed the estate. No one appealed the final settlement.

On April 18, 2019, the children's attorney sent a letter to the Clerk of the County Commission of Grant County acknowledging Decedent Berg's closed estate and requesting that the clerk (1) reopen the estate to address the children's concerns regarding

---

[2] When filing the petition, Ms. Berg listed Jennifer Ford's name as Jennifer Berg on the case caption, but, in the briefs, both Ms. Berg and the children refer to her as Jennifer Ford. To maintain consistency with the circuit court and the briefs, this Court has changed her last name to Ford in the caption.

[3] As discussed below, the circuit court in the underlying action found that Ms. Berg signed a form promising to mail a notice of administration to the heirs but did not provide any notice to the children.

the actions and inactions of Ms. Berg and (2) appoint a fiduciary commissioner. The county clerk complied and appointed Bradley Goldizen as fiduciary commissioner of the reopened estate. Mr. Goldizen held hearings regarding property that Ms. Berg allegedly did not properly account for during the probate of Decedent Berg's estate.[4]

Ms. Berg, in November 2019, filed a petition for a writ of mandamus in the circuit court. She requested that the circuit court find that the county clerk erroneously reopened the estate without jurisdiction. The children intervened. The circuit court granted the writ of mandamus, finding that the county clerk lacked the authority to reopen Decedent Berg's estate. The court also ordered that "the [children] shall have 45 days to file a civil action in this matter" and appointed Mr. Goldizen to be a special commissioner if one was

---

[4] While the legal technicalities of descent and probate are not briefed by the parties in any substantive manner, Article One of Chapter Forty-two of the West Virginia Code, entitled "Descent," regards intestate estates and provides that "[a]ny part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this code, except as modified by the decedent's will." W. Va. Code § 42-1-2(a). When a person dies intestate and has a surviving spouse and surviving descendants that "are not descendants of the surviving spouse," the person's spouse receives one-half of the intestate estate. W. Va. Code § 42-1-3(c). The rest of the estate passes to the person's "descendants by representation." W. Va. Code § 42-1-3a(a). (entitled "Share of heirs other than surviving spouse").

Here, the fiduciary commissioner held at least two hearings to determine which items of personal property should have been included in Decedent Berg's estate. In a hearing on June 18, 2019, which Ms. Berg failed to attend, the fiduciary commissioner took testimony from the children regarding what personal property items they believed should have been included in Decedent Berg's estate. During a hearing on October 9, 2019, Ms. Berg testified, without counsel. The fiduciary commissioner's order stated that she advised that she was safeguarding all of the items of personal property and that she would file an amended appraisement. The hearing transcripts were not included in the record.

3

needed in that future civil action. The children did not appeal the order granting the writ requested by Ms. Berg.

On December 30, 2019, the children filed a civil complaint in the Circuit Court of Grant County, alleging that Ms. Berg "did not properly inventory, itemize nor value multiple personal property items" as well as "potentially real property" in Decedent Berg's estate. The children also alleged that they were never provided with the original appraisement of the estate property filed with the Grant County Clerk. The complaint claimed that Ms. Berg committed fraud "by initially omitting substantial personal property and potentially real property assets" when administering Decedent Berg's estate. The children further alleged that half "of the omitted assets would and should have descended" to the children pursuant to West Virginia Code § 42-1-1 et seq. The relief the children sought included (1) a prompt hearing to address their claims; (2) Mr. Goldizen be reappointed as a special commissioner to "investigate, itemize, inventory and detail any and all assets" of Decedent Berg's estate that Ms. Berg did not "properly disclose[] and administer[]"; (3) after the special commissioner completes his work, a sale occur to maximize assets, with proceeds divided in half between the children and Ms. Berg; (4) the court find that Ms. Berg committed fraud individually and in her capacity as Decedent Berg's estate administratrix by "intentionally omitting multiple and numerous items of personal property" necessary for a proper estate administration; and (5) the court order Ms. Berg to pay the children's attorney's fees.

4

Ms. Berg filed a motion to dismiss, purportedly under West Virginia Rule of Civil Procedure 12(b)(6).[5] On September 15, 2020, the circuit court denied the motion, terming it Ms. Berg's motion for summary judgment, and appointed Mr. Goldizen as special commissioner "to determine the quantity, location, status, and estimated value of the assets owned by Darvin Berg at the date of his death" and then submit a report to the court. The court provided that Mr. Goldizen "may proceed in whatever manner he deems appropriate to complete his task" and ordered the parties to "fully cooperate." The court ordered the special commissioner to file a report within sixty days. After the report's receipt, the court indicated it would "schedule a hearing to receive the findings and hear argument as to a resolution of the matter."

Ms. Berg filed a motion "for relief from order." In that motion, she explained that she filed her previous motion pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure and the motion was not a motion for summary judgment. She requested that the court remove the special commissioner and that the case proceed in the "normal course of civil litigation." The children opposed this motion, and the court denied it on October 22, 2020. In the order denying Ms. Berg's motion, the court stated that the special

---

[5] Neither party includes this motion in the appendices. Ms. Berg asserts in her petition for a writ of prohibition that her motion claimed that "the [e]state was final"; that "the alleged acts were against the [p]ersonal [r]epresentative and the individual was the one served and named in the [c]omplaint"; and that the complaint failed to plead fraud with particularity, as required by Rule 9(b) of the West Virginia Rules of Civil Procedure.

commissioner must continue his work and must "ascertain any and all personal property items that were not probated with the Grant County Clerk" during the administration of Decedent Berg's estate and must "itemize said personal property items."

Subsequently, Ms. Berg filed her answer to the complaint, and the special commissioner filed his fifteen-page report on November 13, 2020.[6] The special commissioner stated that "the following is an inventory of the personal property of Darvin Berg at the time of his death," noting that the report "included web pages showing the replacement costs of many of the items to possibly assist in the settlement of this matter" and that the amounts were "replacement costs only." He stated that he could not ascertain the prices for other items, and that most of the items were present at Ms. Berg's residence, although some items were already sold or at other locations. The report failed to include information regarding whether any of the property was jointly owned by Ms. Berg.

During a hearing on November 16, 2020, the court noted that neither Ms. Berg nor her counsel appeared at the hearing, although they received notice. The court explained that it spoke with Ms. Berg's counsel regarding various defenses "he may utilize at some point in time" during the case. The circuit court noted that it "was inclined, after discussions with [Ms. Berg's counsel]," to conduct an evidentiary hearing relating to the

---

[6] The report included items such as vehicles, scaffolding, tools, ladders, extension cords, air compressors, stools, a pressure washer, a weed eater, a lantern, and multiple firearms.

6

personal property addressed by the special commissioner's report. In its November 20, 2020 order following the hearing, the court ultimately set an evidentiary hearing for December 9, 2020, "to address the items of personal property in dispute within this matter."[7] It is unclear from the record whether this hearing occurred.

In late July, 2021, Ms. Berg filed a motion for summary judgment and a motion in limine to exclude evidence from the fiduciary commissioner hearings held after the estate was reopened.[8] The children opposed both motions. In her motion for summary judgment, Ms. Berg alleged that Decedent Berg had an insolvent estate, that the children had knowledge or the opportunity for knowledge of the closure of the estate, and that their claim of fraud was barred by the statute of limitations. She further argued that the children could not prove the elements of fraud. In response, the children claimed that Ms. Berg did not properly inventory, itemize, or value multiple items of personal property and real property belonging to the estate. They also argued that Ms. Berg "made no effort whatsoever to properly insure" that the children were "properly apprised" of the estate's administration. The children asked that the court deny Ms. Berg's summary judgment motion, so the matter could "proceed in its normal course and fashion." In a hearing on the

---

[7] The November 20, 2020 order suggests that, at some point, the children filed a motion for summary judgment and a motion for judgment on the pleadings. However, these motions were not provided by the parties, and the appendices do not indicate whether the circuit court ever ruled on or had a hearing on these motions.

[8] The appendices do not include Ms. Berg's motion in limine.

motions, the court set a later date for a hearing to address Ms. Berg's motions, as it did not want to rule on pending motions before an evidentiary hearing.

At the subsequent evidentiary hearing on September 15, 2021, the circuit court heard testimony from many individuals called by the plaintiffs, including Mr. Goldizen, the children, and Ms. Berg. Ms. Berg called no witnesses on her behalf. Neither party include the hearing transcript in the appendices, but Ms. Berg claims that, at the hearing, the circuit court concluded that she did not commit fraud, and the children did not allege constructive fraud. Still, the court ruled in the children's favor in a written order which included numerous factual findings and legal conclusions. The court found that Ms. Berg testified before the fiduciary commissioner while the estate was reopened and that "the items of property [the children] questioned [were] still in her possession." Regarding the special commissioner, the court found that he compiled an asset list for the circuit court to aid the court "in determining the probate assets held by Decedent Berg at the time of his death," and that the special commissioner ascertained the assets' value to the best of his ability. The circuit court recognized that the amounts were "a starting point rather than a final appraisal of the items of property." While finding that Ms. Berg signed a form promising to mail a notice of administration to the heirs, the court concluded that she failed to provide any notice to the children. In its order, the court noted that it pronounced "from the bench" during the evidentiary hearing "that it did not believe that [Ms. Berg] committed fraud," and explained that it also did not believe that Ms. Berg "possessed fraudulent intent

8

in her actions administering the Darvin Ray Berg Estate." After describing its

understanding of constructive fraud,[9] the court found that

> [Ms. Berg's] actions, mistakes, omissions, and representations in administering Decedent Berg's estate have had the effect of fraud inasmuch as the Plaintiffs are, as the natural born children of Decedent Berg, entitled to one half of his estate and her failure to properly notify them of the estate administration, her representation that the estate only had $3,000.00 worth of probate property in the appraisal form, her claim to have liquidated the assets, and her declaration that this was a "no asset" estate resulted in the Plaintiffs being defrauded of their inheritance from their father by their step-mother. This [c]ourt cannot allow Defendant Berg to claim mistake by others that were assisting her in preparation of these documents inasmuch as she was the reporter of facts to these entities and also signed sworn statements declaring the information contained within the forms she provided to be true.

The court stated, "[h]aving found constructive fraud, this [c]ourt will move

to determining a remedy."[10] It recognized "that discovery remains ongoing between the

parties on certain issues," including issues relating to ownership of a tractor and a limited

liability corporation. After denying Ms. Berg's motion for summary judgment (and motion

---

[9] Among other cases, the court relied upon *Horton v. Professional Bureau of Collections of Maryland, Inc.*, 238 W. Va. 310, 314, 794 S.E.2d 395, 399 (2016), which states: "Based on our precedent, essentially in order for a plaintiff to prove constructive fraud, he or she must prove the consequences of actual fraud, but does not have to prove a fraudulent intent."

[10] The children did not allege constructive fraud in the complaint. The children admit in their response brief that the circuit court "did agree that [Ms. Berg] did not act with fraudulent intent," but "was still sufficiently convinced that certain items of personal property had not been properly administered through the [e]state . . . to the detriment of the [children]."

in limine), the court ordered, without a judgment or recognition of supporting authority, that the remainder of the assets identified by the special commissioner be subject to public auction.[11]

Ms. Berg filed a motion for a "new trial or to alter or amend judgment," arguing that the evidentiary hearing was not noticed as a trial, but rather as a hearing to allow the children to offer evidence of fraud sufficient to survive her summary judgment motion. She also claimed, among other things, that (1) the children's property list, provided to the special commissioner, failed to prove the property's ownership; (2) the children must prove the property's ownership; and (3) the property's auction was not the appropriate remedy. When denying her motion, the court, in an "Amended Status Order," directed

> both parties and their respective Counsel . . . to take the necessary steps so as to effectuate a sale . . . of certain items of personal property, which were not properly administered by the Defendant and former Fiduciary of the Estate of [Decedent Berg], namely, [Ms.] Berg, which shall also include the Kubota tractor and any and all business equipment of Darvin R. Berg Construction, LLC.

The court also found that the "aforementioned items of personal property . . . were not properly probated" by Ms. Berg and ordered the parties to cooperate with the special commissioner "so as to effectuate a sale."

---

[11] The court excepted from sale jointly titled vehicles.

Ms. Berg then sought a writ of prohibition from this Court. In this action, she argues that the order appointing a special commissioner to obtain and submit evidence and to sell property prior to a determination of ownership or a judgment exceeded the circuit court's legitimate powers.[12]

## II.

## STANDARD FOR ISSUANCE OF WRIT

In considering whether to grant relief on a petition for a writ of prohibition, we must first determine whether the lower court either has no jurisdiction or exceeded its legitimate powers. Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."); Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its

---

[12] This Court held oral argument pursuant to Rule 19 of the West Virginia Rules of Appellate Procedure. Petitioner's counsel failed to attend, but the Court allowed Respondents' counsel to argue alone. While Petitioner's counsel filed a motion to reopen oral argument, the Court denied that motion. We consider the merits of Petitioner's appeal without the benefit of counsel's oral argument pursuant to Rule 19. We remind counsel of the duty to comply with all the Court's written orders, as well as the Court's notices of oral argument.

legitimate powers. *W. Va. Code*, 53-1-1."). In cases where the petitioner asserts that the lower court exceeded its legitimate powers, this Court has discretion to issue the writ:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

### III.

### DISCUSSION

Ms. Berg argues that the circuit court exceeded its legitimate powers by appointing a special commissioner, by ordering the property's sale before determining ownership, and by ordering the property's sale before issuing a judgment for damages. She specifically requests that this Court direct the circuit court to remove the special commissioner, rescind his authority, and strike his report from the record. While we need

12

not address the propriety of the circuit court's appointment of a special commissioner, we find that the circuit court exceeded its legitimate powers by issuing orders to sell contested personal property when the property's ownership was a genuine issue of material fact. These orders were clearly erroneous as a matter of law, and the sale of the goods would damage and prejudice Ms. Berg in a way that is not correctable on appeal.

We first turn to Ms. Berg's contention that the circuit court erroneously ordered the special commissioner to sell personal property before considering proof of the property's ownership. Ms. Berg asserts the circuit court lacked the power to "sell property prior to a determination of ownership and without giving a party the opportunity to be heard[.]" Ms. Berg additionally argues that because, at the hearing on her summary judgment motion, the court resolved that she did not have fraudulent intent, she was not given the opportunity to present witnesses at the hearing. Later, when the court in its order found she committed constructive fraud, she was unable to challenge the court's finding. She further claims that much of the property at issue was not owned solely by Decedent Berg at the time of his death but was, instead, jointly owned property, yet the court erroneously accepted the report from the special commissioner determining that Decedent Berg owned the property and subsequently required its sale without first adjudicating its ownership. In response, the children repeat their underlying arguments that Ms. Berg failed to properly probate the estate and committed fraud, concluding that "certain items of substantial personal property were not properly probated" and they were deprived of their

share of Decedent Berg's estate. Alternatively, the children contend that the circuit court chose the most efficient resolution by appointing a special commissioner to aid in identifying "substantial personal property assets that were not properly probated" and readying them for sale so they could be "equitably" divided. Finally, the children allege that Ms. Berg failed to prove joint ownership of the property by a preponderance of the evidence, and that a circuit court may appoint a special commissioner to sell personal property if a party is damaged by not receiving their proportionate share of an estate.

To determine whether the circuit court exceeded its legitimate powers by ordering the property's sale, we must ascertain the practical effect of the orders to sell, within the confines of the West Virginia Rules of Civil Procedure. Ms. Berg does not specifically claim that the circuit court granted summary judgment to the children by ordering the personal property's sale when the parties contested ownership. Still, although the circuit court did not specify that it was granting the children summary judgment, its order (1) accepting the special commissioner's report; (2) finding Ms. Berg committed constructive fraud; and (3) ordering the personal property's sale as a remedy, effectively did so. *See State ex rel. Hooff v. Wilson*, No. 23-53, 2023 WL 6940755, at *3 (W. Va. Oct. 20, 2023) (memorandum decision) (electing how to treat an order that was the subject of a petition for a writ of prohibition when the order did "not identify under which rule or rules of the West Virginia Rules of Civil Procedure the court proceeded"). Given the result and

14

effect of the circuit court's order, we consider it as an order granting the children summary judgment. *See id.*

When considering a summary judgment motion, a court may issue a judgment if the circumstances meet the requirements of Rule 56 of the West Virginia Rules of Civil Procedure. Rule 56(c) governs the grant of summary judgment:

> [t]he [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

W. Va. R. Civ. P. 56(c). When deciding whether to grant a party summary judgment, and thus find that party is entitled to judgment as a matter of law without proceeding to trial or further discovery, the trial court's role "is to decide whether a genuine issue of material fact exists," not to weigh the evidence or to decide the issue of fact. *Goodwin v. Shaffer*, 246 W. Va. 354, 359-60, 873 S.E.2d 885, 890-91 (2022). In other words, "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." Syl. pt. 5, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). A grant of summary judgment "is a determination that, as a matter of law, there is no issue of fact to be tried." Syl. pt. 7, in part, *Petros v. Kellas*, 146 W. Va. 619, 122 S.E.2d 177 (1961). Courts should grant a motion for summary judgment "[i]f there is no genuine issue as to any material fact" but must deny the motion "if there is a genuine issue as to a material fact." Syl pt. 4, in part,

*Aetna Cas. & Sur. Co.*, 148 W. Va. 160, 133 S.E.2d 770.[13] A court should not grant summary judgment if an inquiry into the facts could clarify the applicable law, as this Court explained in Syllabus point 3 in *Aetna*: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

In limited circumstances, a court may grant summary judgment for the adverse party, against the party requesting summary judgment. Syl. pt. 4, *Employers' Liab. Assurance Corp. v. Hartford Accident & Indem. Co.*, 151 W. Va. 1062, 158 S.E.2d 212 (1967).[14] Yet in issuing a judgment to the nonmoving party, the court still must determine "that there is no genuine issue as to any material fact and that the adverse party is entitled

---

[13] As this Court explained in Syllabus point 4 of *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994),

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

[14] Syllabus point 4 of *Employers' Liability Assurance Corp. v. Hartford Accident & Indemnity Co.*, 151 W. Va. 1062, 158 S.E.2d 212 (1967), provides the rationale for granting summary judgment to a nonmoving party:

> As the purpose of the summary judgment proceeding is to expedite the disposition of the case a summary judgment may be rendered against the party moving for judgment and in favor of the opposing party even though such party has made no motion for judgment.

16

to judgment as a matter of law." Syl. pt. 5, in part, *Employers' Liab. Assurance Corp.*, 151 W. Va. 1062, 158 S.E.2d 212. Furthermore, the court must provide an adverse party reasonable notice and an opportunity to be heard before it sua sponte grants summary judgment on grounds not requested by the moving party. Syl pt. 4, *Loudin v. Nat'l Liab. & Fire Ins. Co.*, 228 W. Va. 34, 716 S.E.2d 696 (2011).[15]

Rather than considering whether any genuine issue of material fact existed as required by Rule 56(c), particularly regarding the ownership of the property, the circuit court abruptly adopted the special commissioner's findings. Although we lack the transcript of the evidentiary hearing, the record reflects that the circuit court resolved, during the hearing on her motion for summary judgment, that Ms. Berg did not commit fraud in administering the estate, and Ms. Berg did not present evidence regarding the contested ownership of the items at that hearing. As Ms. Berg contends, the court did not

---

[15] Syllabus point 4 in *Loudin v. National Liability & Fire Insurance Co.*, 228 W. Va. 34, 716 S.E.2d 696 (2011), provides that

> As a general rule, a trial court may not grant summary judgment *sua sponte* on grounds not requested by the moving party. An exception to this general rule exists when a trial court provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is *sua sponte* considering granting summary judgment.

*See Carr v. Michael Motors, Inc.*, 210 W. Va. 240, 249, 557 S.E.2d 294, 303 (2001) ("Our cases are clear that a circuit court may not grant summary judgment on a claim 'without permitting the adverse party a reasonable opportunity to submit pertinent material[.]'" (quoting *Kopelman & Assocs., L.C. v. Collins*, 196 W. Va. 489, 494, 473 S.E.2d 910, 915 (1996))).

notice the hearing as a trial, yet the order entered after the evidentiary hearing simply concluded, without analysis, that assets listed in the special commissioner's report were "held by Decedent Berg at the time of his death" and were "in possession of [Ms.] Berg."[16] The court then "received and entered" the list "into the record," although Ms. Berg argued in her motion for summary judgment that the estate was properly probated with the advice of counsel. By adopting these findings, without considering Ms. Berg's position regarding the ownership of the property, the circuit court "improperly assumed the role of fact finder," as the parties contested the property's ownership and the propriety of the estate's administration. *Goodwin*, 246 W. Va. at 360, 873 S.E.2d at 891. The adoption of the special commissioner's findings, when contested questions of material fact remained, and without notice to Ms. Berg that the court would consider the merits of the children's complaint, was clearly erroneous.

Furthermore, the children's contention that Ms. Berg failed to prove the property's ownership *by a preponderance of the evidence* also indicates questions existed for a trier of fact to determine, further bolstering our determination that genuine issues of

---

[16] This Court lacks the testimony and evidence heard by the circuit court in the evidentiary hearing on Ms. Berg's motion for summary judgment, as the parties neglected to include a transcript of this proceeding in the appendices. Still, the circuit court's order does not show any consideration of the testimony in the hearing, or if or how it resolved any material factual disputes.

material fact remain.[17] "A preponderance of the evidence means that the party with that burden must prove its case by 'greater weight.'"[18] *Frazier v. Gaither*, 248 W. Va. 420, 425, 888 S.E.2d 920, 925 (2023) (quoting 2 Louis J. Palmer, Jr., *Handbook on Evidence for West Virginia Lawyers* § 1301.03[2], at 640 (7th ed. 2021)). The children's recitation of this standard of proof indicates that the circuit court weighed the evidence, and such a determination is not appropriate at the summary judgment stage. *See Goodwin*, 246 W. Va. at 359-60, 873 S.E.2d at 890-91.

The circuit court's erroneous adoption of the special commissioner's contested findings that the property belonged to Decedent Berg resulted in a sequence of additional determinations, compounding the error. The circuit court reached the factual and legal conclusion that Ms. Berg did not commit actual fraud but committed constructive fraud in administering Decedent Berg's estate—although constructive fraud was not pled by the children in their complaint.[19] Finally, without citation to authority in equity or

---

[17] The parties disagree as to who has the burden of proof in this case, and this opinion does not reach that issue.

[18] The preponderance of the evidence standard means "'that the party who has the burden of proof must produce evidence tending to show the truth of such facts that is more convincing . . . as worthy of belief, than that which is offered in opposition.'" *Frazier v. Gaither*, 248 W. Va. 420, 425, 888 S.E.2d 920, 925 (2023) (quoting 2 Louis J. Palmer, Jr., *Handbook on Evidence for West Virginia Lawyers* § 1301.03[2], at 640 (7th ed. 2021)) (omission in *Frazier*).

[19] The children still contend Ms. Berg committed actual fraud in their response brief.

statute, the circuit court fashioned the remedy to sell the contested property. The court ordered the sale despite its express recognition that the property's valuation was unclear and its failure to consider contested evidence of the property's true owner or owners at the time of Decedent Berg's death.[20] These unsettled factual issues are plainly material to the ultimate outcome of the claims in the underlying case. This order, which overwhelmingly relied on contested factual determinations, defied the requirement of Rule 56(c) of the West Virginia Rules of Civil Procedure that summary judgment should only be granted when there is no genuine issue as to any material fact and the party is entitled to the judgment as a matter of law. *See McDowell v. Allstate Vehicle & Prop. Ins. Co.*, 247 W. Va. 536, 549, 881 S.E.2d 447, 460 (2022) ("The record below shows there are genuine issues of material fact to be tried, and inquiry concerning the facts is necessary to clarify the application of the law.").

Furthermore, these orders do not present the limited circumstances where a grant of summary judgment for the nonmoving party—here, the children—may be appropriate. In this case, numerous genuine issues of material fact remained regarding the ownership of the property and the propriety of the estate's administration. *See* Syl. pt. 5, *Emps.' Liab. Assurance Corp.*, 151 W. Va. 1062, 158 S.E.2d 212. Thus, the initial order to sell the property was clearly erroneous as a matter a law, as was the "Amended Status

---

[20] At this juncture, we need not address the propriety of the circuit court's remedy to sell the property in a civil action asserting fraud.

Order" that again ordered the parties to cooperate with the special commissioner to sell the property.

Because this Court finds that the circuit court exceeded its legitimate powers by ordering that the special commissioner sell the property when genuine issues of material fact remained regarding the property's ownership, we turn to the *Hoover* factors and issue the requested writ of prohibition, as moulded. *See* Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). As we have found that the circuit court's order is "clearly erroneous as a matter of law," the third *Hoover* factor is met. *Id.* Furthermore, Ms. Berg "will be damaged or prejudiced in a way that is not correctable on appeal" if the contested property is sold and no longer in her possession, and, therefore, the second *Hoover* factor is also satisfied. *Id.* For these reasons, we grant a writ of prohibition, as

moulded, precluding the circuit court from ordering that the special commissioner sell the property.[21]

## IV.

## CONCLUSION

For the reasons stated above, this Court grants the writ of prohibition, as moulded, to preclude the circuit court from ordering the special commissioner to sell the listed property.

Writ Granted As Moulded.

---

[21] We grant the writ of prohibition, as moulded, because we are not granting Ms. Berg all of her requested relief. Ms. Berg also asks this Court to find that the circuit court exceeded its legitimate powers when it (1) appointed a special commissioner to inventory and appraise personal property that is the subject of a lawsuit and (2) ordered the sale of the property prior to a judgment for damages. She further requests that the Court direct the circuit court to remove the special commissioner, rescind his authority, and strike the report from the record. Having found that the circuit court's orders to sell the property exceeded the circuit court's legitimate powers, we need not address these remaining contentions, as they may be addressed below in light of this opinion or later on a direct appeal.